IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACQUELINE MATHISEN, | Case No. 3:22-cv-1250-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OREGON HEALTH & SCIENCE UNIVERSITY**, **WAYNE MONFIES**, **RUTH BEYER**, **JAMES A. CARLSON**, **DANNY JACOBS**, **CHAD PAULSON**, **STEVE ZIKA**, **STACY CHAMBERLAIN**, **PRASHANT DUBEY**, and **DOES 1 and 2**, | |
| Defendants. | |

Brent H. Smith, BAUM SMITH LLC, PO Box 967, 808 Adams Avenue, La Grande, OR 97850. Of Attorneys for Plaintiff.

Thomas R. Johnson, Brenda K. Baumgart, Alex Van Rysselberghe, and Alexandra C. Giza, STOEL RIVES LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Jacqueline Mathisen brings this lawsuit against her former employer Oregon

Health & Science University (OHSU), eight named individual Defendants who are or were

members of OHSU's Board of Directors (OHSU Board), and two unnamed individual (Doe)

Defendants who are or were members of OHSU's Vaccine Exception Review Committee

(VERC). Ms. Mathisen began working for OHSU in 2012. Beginning in July 2017, she was a laboratory manager in OHSU's research division. In August 2021, Ms. Mathisen informed OHSU that she was unable to receive a COVID-19 vaccination due to her religious beliefs and a medical condition. OHSU offered to accommodate Ms. Mathisen if she wore a mask while at work. Ms. Mathisen declined OHSU's offer of accommodation. She alleges that an unvaccinated and unmasked person poses no greater threat of transmission of COVID-19 than a vaccinated person. OHSU terminated Ms. Mathisen's employment on November 22, 2021.

In her First Amended Complaint (FAC), Ms. Mathisen asserts four claims and a separate request for declaratory relief. In her First Claim, Ms. Mathisen alleges that OHSU violated Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e-5, by discriminating against her because of her religion. In her Second Claim, Ms. Mathisen alleges that she is a "disabled person" and that OHSU discriminated against her because of her disability and failed to accommodate her disability, in violation of Oregon law, specifically Or. Rev. Stat. (ORS) 659A.112. In her Third Claim, Ms. Mathisen alleges that OSHU discriminated against her because of her race and gender, in violation of ORS 659A.030. In her Fourth Claim, Ms. Mathisen alleges that the members of OHSU's Board and VERC violated her First Amendment right to freedom of religion, which is actionable under 42 U.S.C. § 1983. Finally, Ms. Mathisen asks the Court to declare that OHSU's Board and VERC violated the Free Exercise Clause of the First Amendment.

Defendants have moved for judgment on the pleadings against Plaintiff's First and Second Claims under Rule 12(c) of the Federal Rules of Civil Procedure and moved to dismiss Plaintiff's Fourth Claim and request for declaratory relief under Rule 12(b)(6). Defendants, however, have not filed an answer to Plaintiff's FAC; they filed an answer only to Plaintiff's

original complaint, which was later superseded by Plaintiff's FAC. Accordingly, a motion for

judgment on the pleadings is procedurally improper.[1] The Court will treat Defendants' motion

for judgment on the pleadings as a motion to dismiss for failure to state a claim because the same

standards apply to both motions.[2] For the reasons explained below, the Court dismisses

Plaintiff's First, Second, and Fourth Claims and Plaintiff's request for declaratory relief.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no

cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, a court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint

"may not simply recite the elements of a cause of action, but must contain sufficient allegations

of underlying facts to give fair notice and to enable the opposing party to defend itself

---

[1] *See Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) ("[T]the pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made."); *Skinner v. Mountain Lion Acquisitions, Inc*., 2014 WL 3853424, at *1 (N.D. Cal. Aug. 1, 2014) (finding premature Rule 12(c) motion challenging unanswered amended complaint).

[2] *See Stewart v. Beam Global Spirits & Wine, Inc*., 877 F. Supp. 2d 192, 194-95 (D.N.J. 2012) ("Defendants cannot move for judgment on the pleadings under Rule 12(c) because they have not technically answered Plaintiffs' second amended complaint. Therefore, the Court will construe . . . Defendants' motion as one brought pursuant to Federal Rule of Civil Procedure 12(b)(6), particularly because the same standard applies for either motion."); *Rizzi v. Calumet City*, 183 F.R.D. 639, 640-41 (N.D. Ill. 1999) (concluding that pleadings were not "closed" for purposes of Rule 12(c) where defendants had not yet filed their answer, and construing Rule 12(c) motion for judgment on the pleadings as Rule 12(b)(6) motion to dismiss).

effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A court must draw all

reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., v. Ikon*

*Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a

plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556

U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an

entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation

marks omitted).

Further, in a case alleging the same claim against multiple defendants, there must be

specific allegations explaining what each defendant allegedly did wrong, rather than general

allegations asserted against them as a group. *See Evans v. Sherman*, 2020 WL 1923176, at *3

(E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together"

makes it "impossible for the Court to draw the necessary connection between the actions or

omissions" of the various defendants); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888,

908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant took that caused

Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole."

(quotation marks and citation omitted)); *Wright v. City of Santa Cruz*, 2014 WL 5830318, at *5

(N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all Defendants together and fail to allege the factual basis for each defendant's liability.").

## BACKGROUND

On August 13, 2021, amid the surge in COVID-19 cases, the Governor of Oregon issued Executive Order 21-29 (the EO). In the EO, the Governor explained that the summer surge in COVID-19 infections "is imperiling the state health system's ability to manage not just COVID-19 patients, but also those who require specialized medical care after car accidents, heart attacks, and other medical emergencies" and added that "employer vaccination requirements have become an important tool" for managing the surge. The EO required that state executive-branch employees be "fully vaccinated" against COVID-19 by the later of October 18, 2021, or six weeks after the date that the Food and Drug Administration (FDA) approves a COVID-19 vaccine. The EO allowed for exceptions for individuals unable to be vaccinated due to disability, qualifying medical condition, or a sincerely held religious belief.

After the FDA approved the COVID-19 vaccine on August 23, 2021, the Oregon Health Authority (OHA) adopted similar vaccination rules. One of those rules, then-codified at Oregon Administrative Rule (OAR) 333-019-1010, is known as the "Healthcare Order."[3] Originally adopted on August 25, 2021, and then modified on September 1, 2021, the Healthcare Order explained:

> Healthcare providers and healthcare staff have contact with
> multiple patients over the course of a typical day and week,
> including providers that provide care for people in their homes.
> Individuals cared for in these settings are more likely than the
> general public to have conditions that put them at risk for
> complications due to COVID-19. COVID-19 variants are running
> through the state's unvaccinated population and causing an

---

[3] The OHA suspended OAR 333-019-1010 in mid-2023 and repealed it effective November 6, 2023.

> increase in breakthrough cases for those who are fully vaccinated.
> This rule is necessary to help control COVID-19, protect patients,
> and to protect the state's healthcare workforce.

OAR 333-019-1010(1). Based on these concerns, the Healthcare Order provided that after

October 18, 2021, "Health care providers and healthcare staff may not work, learn, study, assist,

observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided

documentation of a medical or religious exception." OAR 333-019-1010(3)(a).[4]

---

[4] The terms "healthcare providers and healthcare staff" were defined as:

> individuals, paid and unpaid, working, learning, studying,
> assisting, observing or volunteering in a healthcare setting
> providing direct patient or resident care or who have the potential
> for direct or indirect exposure to patients, residents, or infectious
> materials, and includes but is not limited to any individual licensed
> by a health regulatory board as that is defined in ORS 676.160,
> unlicensed caregivers, and any clerical, dietary, environmental
> services, laundry, security, engineering and facilities management,
> administrative, billing, student and volunteer personnel.

OAR 333-019-1010(2)(f)(A). "Healthcare setting" was defined as:

> any place where health care, including physical or behavioral
> health care[,] is delivered and includes, but is not limited to any
> health care facility or agency licensed under ORS chapter 441
> or 443, such as hospitals, ambulatory surgical centers, birthing
> centers, special inpatient care facilities, long-term acute care
> facilities, inpatient rehabilitation facilities, inpatient hospice
> facilities, nursing facilities, assisted living facilities, residential
> facilities, residential behavioral health facilities, adult foster
> homes, group homes, pharmacies, hospice, vehicles or temporary
> sites where health care is delivered (for example, mobile clinics,
> ambulances), and outpatient facilities, such as dialysis centers,
> health care provider offices, behavioral health care offices, urgent
> care centers, counseling offices, offices that provide
> complementary and alternative medicine such as acupuncture,
> homeopathy, naturopathy, chiropractic and osteopathic medicine,
> and other specialty centers.

OAR 333-019-1010(2)(g)(A).

PAGE 6 – OPINION AND ORDER

In late 2021, the United States Secretary of Health and Human Services (the Secretary),

who administers the Medicare and Medicaid programs, issued an interim final rule amending the

existing conditions of participation in Medicare and Medicaid to add a new requirement—that

facilities ensure that their covered staff are vaccinated against COVID-19. 86 Fed. Reg. 61555,

61616-27 (Nov. 5, 2021). The rule required providers to offer medical and religious exemptions

and did not cover staff who teleworked full-time. *Id.* at 61571-72. A facility's failure to comply

with the vaccination requirement may lead to monetary penalties, denial of payment for new

admissions, and ultimately termination of participation in the programs. *Id.* at 61574. As

explained by the Supreme Court, "[t]he Secretary issued the rule after finding that vaccination of

healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to

whom care and services are furnished.'" *Biden v. Missouri*, 595 U.S. 87, 91 (2022) (citing 86

Fed. Reg. at 61561). The Supreme Court upheld the Secretary's rule as within the Secretary's

authority provided by Congress. *Id.* at 93. The Supreme Court added:

> COVID-19 is a highly contagious, dangerous, and—especially for
> Medicare and Medicaid patients—deadly disease. The Secretary of
> Health and Human Services determined that a COVID-19 vaccine
> mandate will substantially reduce the likelihood that healthcare
> workers will contract the virus and transmit it to their patients.
> 86 Fed. Reg. 61557-61558. He accordingly concluded that a
> vaccine mandate is "necessary to promote and protect patient
> health and safety" in the face of the ongoing pandemic. *Id.*, at
> 61613.

*Id.* In mid-2023, the Secretary issued a new rule withdrawing the vaccination requirement.

88 Fed. Reg. 36485, 36488 (June 5, 2023) (effective Aug. 4, 2023).

In September 2021, OHSU announced a policy requiring employees to be vaccinated

against COVID-19 by late October, unless the employee had a sincerely held religious belief or

medical circumstance that prevented the employee from receiving the vaccine. As previously

stated, in August 2021 Plaintiff put OHSU on notice of her sincerely held religious belief and

medical condition that prevented her from receiving a COVID-19 vaccination. OHSU offered the accommodation of masking, and Plaintiff declined the proposed accommodation. In November 2022, OHSU terminated Plaintiff's employment.

## DISCUSSION

**A.  Plaintiff's Claim of Religious Discrimination in Employment, 42 U.S.C. § 2000e**

Plaintiff's First Claim is brought against only OHSU. Plaintiff alleges that OHSU is a covered employer and that it engaged in religious discrimination in employment in violation of 42 U.S.C. § 2000e-2(a)(1).

### 1.  Legal Framework

Under Title VII, it is unlawful for a covered employer "to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case for religious discrimination, the employee must demonstrate that "(1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (citation omitted). If the employee succeeds in establishing a *prima facie* case, the burden shifts to the employer to prove that it either "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.*

Title VII does not "impose a duty on the employer to accommodate at all costs"; rather, the employer must offer only a "reasonable" accommodation. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70, (1986); *see also Am. Postal Workers Union, S.F. Local v. Postmaster Gen.*, 781 F.2d 772, 777 (9th Cir. 1986) ("[A] reasonable accommodation need not be on the employee's

terms only."). An accommodation that "eliminates the [alleged] conflict between employment requirements and religious practices" will satisfy that requirement, provided that the accommodation is not itself discriminatory. *Ansonia*, 479 U.S. at 70-71 (holding that unpaid leave for holy day observance "would generally be a reasonable [accommodation]," but would not be reasonable if *paid* leave was available for all purposes except religious ones). When an employer proposes an accommodation that effectively eliminates the alleged religious conflict, "the inquiry under Title VII reduces to whether the accommodation reasonably preserves the affected employee's employment status." *Am. Postal Workers Union*, 781 F.2d at 776-77.

If a proposed accommodation eliminates the employee's religious conflict and the employee rejects the accommodation "solely on secular grounds," Title VII does not require the employer to accept an alternative proposed accommodation. *Id.* at 776. "[W]here the employer has. . . reasonably accommodated the employee's *religious* needs, the [Title VII] inquiry is at an end." *Ansonia*, 479 U.S. at 68 (emphasis added); *see also Breshears v. Or Dep't of Transp.*, 2023 WL 136550, at *3-4 (D. Or. Jan. 9, 2023) (where the plaintiff objected to vaccination requirement on religious grounds, court concluding that the plaintiff's objection, on medical grounds, to the offered accommodation of masking may have supported a disability discrimination claim, but that he failed to state a Title VII religious discrimination claim (citing *Ansonia*)).

## 2. Application

In support of their motion to dismiss, Defendants argue that Plaintiff's Title VII claim fails because OHSU offered to accommodate Plaintiff's religious beliefs by offering an accommodation—masking—to which Plaintiff has alleged no objection based on religion. According to Defendants, the offered accommodation, therefore, was reasonable as a matter of law. Plaintiff counters that the reasonableness of an offered accommodation is a fact-specific

determination not appropriate for resolution on Defendants' motion. Specifically, she alleges that

"[a]n unvaccinated and unmasked Plaintiff posed no greater threat of transmission of COVID-19

than vaccinated coworkers," and argues that Defendants' "ought to be required to show why the

accommodation offered was necessary for a safety purpose." ECF 18, ¶ 22 (FAC); ECF 23,

at 12. Plaintiff also alleges that OHSU's method of evaluating objections to its vaccination

policy was discriminatory because it was "by design meant to convince employees, like Plaintiff,

that she did not have a sincerely held religious belief" and "to embarrass and shame Plaintiff for

her beliefs." *Id.* ¶ 23.

Plaintiff's assertion that masking would not promote safety is a *secular* objection, not a

*religious* one. That objection, therefore, does not establish that the offered accommodation to her

religious objection was not reasonable for purposes of her claim of religious discrimination. *See*

*Am. Postal*, 781 F.2d at 776-77; *Ansonia*, 479 U.S. at 68. Nor has Plaintiff plausibly alleged that

the offered accommodation was discriminatory (*e.g.*, that masking was offered as an

accommodation to employees who objected to receiving a vaccination on religious grounds but

was not offered to those who objected on other grounds). *Cf. Ansonia*, 479 U.S. at 70-71. She

also has not sufficiently alleged that masking would not have "reasonably preserved" her

employment status. *See Am. Postal*, 781 F.2d at 776-77 (whether employment status is

reasonably preserved "may be objectively assessed," and a court need not "rely upon the purely

subjective assessment of the affected employee").

Finally, Plaintiff provides no authority to support her argument that the process OHSU

used to evaluate religious exemptions was itself discriminatory, nor any facts to support her

allegation that the policy was intended to convince employees like Plaintiff that their religious

beliefs were insincere or to "embarrass and shame" Plaintiff. *See Iqbal*, 556 U.S. at 678 ("'A

pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement." (quoting *Twombly*)

(citation omitted)).

For all these reasons, the Court finds that Plaintiff has failed to state a claim against

OHSU for employment religious discrimination under 42 U.S.C. § 2000e-5. Accordingly, the

Court dismisses Plaintiff's First Claim.[5]

## B.  Plaintiff's Claim of Disability Discrimination, ORS 659A.112

Plaintiff's Second Claim is brought only against OHSU. Plaintiff alleges that OHSU

failed to accommodate her disability in violation of ORS 659A.112.

### 1.  Legal Framework

ORS 659A.112(1) makes it unlawful "for any employer to . . . discharge from

employment or to discriminate in compensation or in terms, conditions[,] or privileges of

employment on the basis of disability." An employer violates that provision by failing to "make

reasonable accommodation to the known physical or mental limitations of an otherwise qualified

disabled person who is a job applicant or employee, unless the employer can demonstrate that the

accommodation would impose an undue hardship on the operation of the business of the

employer." ORS 659A.112(2)(e). An individual is "disabled" if she "has a physical or mental

impairment that substantially limits one or more major life activities." ORS 659A.104(1)(a).[6]

---

[5] In her Response, Plaintiff maintains that in addition to failure to accommodate, she alleged
"disparate treatment" in enforcement of OHSU's paid time off and equipment return policies,
and "retaliation." ECF 23, at 10, 12. If Plaintiff intended to claim disparate treatment based on
religion, that is not clear from the FAC. *Compare* FAC ¶¶ 19-26, *with id.* ¶¶ 37. Plaintiff's
retaliation claim is also not apparent from the FAC. *See id.* ¶¶ 10-26.

[6] An individual also is considered to have a disability if she "has a record of having a physical or
mental impairment that substantially limits one or more major life activities" or if she "is
regarded as having a physical or mental impairment that substantially limits one or more major
life activities." ORS 659A.104(1)(b)-(c). Employers are not required to provide a reasonable

Activities that are considered "major life activities" for the purpose of determining if an individual has a disability include "[c]aring for oneself," "[s]eeing," "[h]earing," "[s]tanding," and "[b]reathing." ORS 659A.104(2).

To establish a *prima facie* case of disability discrimination under Oregon law, the plaintiff must show: (1) she is a qualified individual with a disability; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and her disability. *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179, 1187 (D. Or. 2016). To establish a *prima facie* case for disability discrimination due to a failure to make reasonable accommodations, the employee must show that: (1) she is a person with a disability; (2) her employer was on notice of her disability; (3) she could perform the essential functions of her job either with or without reasonable accommodations; and (4) the employer refused to provide reasonable accommodations. *Noll v. IBM*, 787 F.3d 89, 94 (2d Cir. 2015) (construing federal Americans with Disabilities Act of 1990).[7]

### 2. Application

Plaintiff states that she "is a 'disabled person,'" FAC, ¶ 28, but alleges no facts demonstrating the existence of a "physical or mental impairment that substantially limits one or more major life activities," ORS 659A.104(1)(a)-(b).[8] That is insufficient to support a claim for

---

accommodation to individuals who only meet the "regarded as having" criterion. *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1232-33 (9th Cir. 2003) (construing federal Americans with Disabilities Act of 1990).

[7] Oregon's antidiscrimination law "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." ORS 659A.139.

[8] Plaintiff's FAC implies that her disability prevented her from receiving a vaccination, *see* FAC ¶ 31, but she cites no authority to support the conclusion that the activity of receiving a vaccination is a qualifying "major life activity" within the meaning of ORS 659A.104(1).

discrimination on the basis of disability. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions . . . will not do.'"(quoting *Twombly*)). And regarding her claim that that OHSU "did not engage in any interactive process with [her]" to reasonably accommodate her alleged disability, Plaintiff also fails adequately to allege that she placed OHSU on notice of her disabled status. *See* ORS 659A.112(2)(e) (employer violates ORS 659A.112(1) by failing to "make reasonable accommodation to . . . *known* physical or mental limitations" (emphasis added)). Plaintiff also has not explained why, even if she had a qualifying disability and placed OHSU on notice of that disability, the offered accommodation of masking was not reasonable.

For all of these reasons, the Court finds that Plaintiff has failed to state a claim for disability discrimination or failure to accommodate under ORS 659A.112. Accordingly, the Court dismisses Plaintiff's Second Claim.

**C.  Plaintiff's Claim of Deprivation of Civil Rights, 42 U.S.C. § 1983**

Plaintiff's Fourth Claim is brought against only the individually named Defendants and the two Doe Defendants, who, at all relevant times, were members of OHSU's Board of Directors and its VERC, respectively. *See* FAC ¶ 43. Plaintiff alleges that these Defendants deprived Plaintiff of her constitutional right to freedom of religion guaranteed by the First Amendment and are thus liable under 42 U.S.C. § 1983. In her FAC, Plaintiff asserts that these Defendants, acting under color of state law, "expressed overt hostility to the religious beliefs of Plaintiff by declaring Plaintiff's religious beliefs 'personal moral choices and/or conscientious objection rather than a tenet of a religious faith.'" FAC ¶ 45. Plaintiff also asserts that "[u]nder 42 USC § 1983, state actors like the Board Defendants and Does 1 and 2 forfeit their qualified immunity from liability when, acting in their official capacities, they deliberately infringe on constitutional rights." *Id.* ¶ 43. That assertion, however, is not a well-pleaded factual allegation.

Instead, it is a legal conclusion, which the Court need not credit. *See Iqbal*, 556 U.S. at 678-79. It also misstates the law of qualified immunity.

### 1. Legal Framework

"Qualified immunity is an affirmative defense that must be raised by a defendant." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). A defendant, however, may assert qualified immunity in a motion to dismiss under Rule 12(b)(6) if the court "can determine, based on the complaint itself, that qualified immunity applies." *O'Brien*, 818 F.3d at 936 (quoting *Groten*). This principle was most recently applied by the Ninth Circuit in *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023). When considering whether qualified immunity applies, however, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 572 U.S. 744, 745 (2014); *accord Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts. And reasonableness of official action, in turn, must be assessed in light of the legal rules that were clearly established at the time the action was taken." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (cleaned up). "The privilege is an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (emphasis in original) (quotation marks omitted). The Supreme Court also has "stressed the importance of resolving immunity questions at the

earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). But qualified immunity is only an immunity from damages; it is not an immunity from declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id.* The second step is to determine "whether the right was clearly established." *Id.* The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. "Regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his conduct was lawful." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Abbasi*, 582 U.S. at 152 (quotation marks omitted). To be clearly established, "[i]t is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Id.* at 151 (citations and quotation marks omitted). "The 'clearly established' requirement 'operates to ensure that before they are subject to suit, [government officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (alteration in original).

Thus, the key inquiry in determining whether an officer has qualified immunity is whether the officer had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation of the standard" as long as "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand"); *Ellins*, 710 F.3d at 1064 ("Rather, the relevant question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional."(quotation marks omitted); *Bull v. City & Cnty. of S.F.*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc) ("[T]he specific facts of previous cases need not be materially or fundamentally similar to the situation in question."). A district court in this circuit first looks to binding precedent from the Supreme Court or the Ninth Circuit. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). After that, "in the absence of binding precedent, [courts] look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Id.* (quotation marks omitted). Further, the plaintiff bears the burden of showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

### 2. Application

As alleged by Plaintiff in her FAC, the members of the OHSU Board of Directors established OHSU's "institutional strategy and policy concerning religious accommodations in connection with its COVID-19 vaccination mandates," including the creation of OHSU's VERC. FAC ¶ 7. Plaintiff further alleges that the Doe defendant members of the VERC "were directly responsible for making decisions on Plaintiff's religious and medical accommodation requests." *Id.* ¶ 8. For purposes of this qualified immunity analysis, the Court accepts Plaintiff's factual allegations and resolves all factual disputes in favor of Plaintiff.

Nevertheless, in her response to Defendants' motion to dismiss, Plaintiff provides no case authority from any court, let alone the Supreme Court or the Ninth Circuit, sufficient to show that any of the individually named Defendants or either of the two Doe Defendants would have had "fair warning" that their conduct, as alleged by Plaintiff, was unconstitutional. *See Ellins*, 710 F.3d at 1064.

In a thoughtful and well-reasoned decision on similar facts, United States District Judge Karin Immergut noted in her discussion of qualified immunity that "government actors may still be on notice that their conduct violates established law in novel factual circumstances in obvious or egregious cases." *MacDonald v. Or. Health & Sci. Univ.*, 2023 WL 5529959, at *11 (D. Or. Aug. 28, 2023) (citing *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020); *Hope*, 536 U.S. at 741; *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001)). Judge Immergut continued, however: "This is not such an obvious or egregious case where, notwithstanding the lack of judicial guidance, the Board and VERC Defendants' conduct was so clearly violative of a constitutional right that they should have known their actions were unconstitutional." *Id.* [9]

---

[9] Plaintiff relies primarily on two cases when arguing that the actions of the individual Defendants violated "clearly established law." The first case is *Bushouse v. Loc. Union 2209, United Auto., Aerospace & Agric. Implement Workers of Am.*, 164 F. Supp. 2d 1066 (N.D. Ind. 2001). In that case, the district court held that a union's request that an employee produce independent corroboration that his beliefs were sincerely held and religious in nature did not violate Title VII's religious accommodation provision. The district court explained, however, that "[i]n the context of religious discrimination claims, courts have . . . been reluctant to scrutinize an individual's religious beliefs and have not required that the beliefs in question be based upon organized or recognized teachings of a particular sect." *Id.* at 1074. That statement is too general to show that the individual Defendants here had "fair warning" that their conduct was unconstitutional. The second case is *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021). In that case, teachers and administrators sued New York City and its officials, alleging that the city's COVID-19 vaccine mandate for individuals who worked in city schools violated the Free Exercise Clause. The Second Circuit held that the plaintiffs had demonstrated a likelihood of success on their as-applied challenge and that "denying an individual a religious accommodation based on someone else's publicly expressed religious views . . . runs afoul of the Supreme Court's teaching that it is not within the judicial ken to question the centrality of particular

As previously noted, a plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels*, 290 F.3d at 969. Plaintiff has not satisfied her burden. Accordingly, the Court dismisses Plaintiff's Fourth Claim under the doctrine of qualified immunity.

### D.  Plaintiff's Request for Prospective Declaratory Relief

Plaintiff also seeks declaratory relief from the Court. In her FAC, Plaintiff asks the Court to "declare that the Board Defendants' policy proclaiming which beliefs are worthy of religious exceptions and which beliefs were not violates the U.S. Constitution's Free Exercise Clause." FAC ¶ 51. As previously noted, qualified immunity is only an immunity from damages; it is not an immunity from declaratory or injunctive relief. *L.A. Police Protective League*, 995 F.2d at 1472.

Defendants originally moved to dismiss Plaintiff's request for declaratory relief on the ground that Plaintiff appeared to be seeking retrospective relief and that such relief is barred by the Eleventh Amendment. Defendants stated that although prospective declaratory relief may be available under § 1983, "it is well settled that the Eleventh Amendment prohibits declaratory relief insofar as it concerns only past violation of law." ECF 20, at 23-24 (citing *Green v. Mansour*, 474 U.S. 64, 72-73 (1985)).

In her response, Plaintiff does not argue that she is permitted to seek retrospective declaratory relief here. Instead, the entirety of Plaintiff's response to Defendants' argument on the unavailability of declaratory relief in this case is as follows:

---

beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Id.* at 168 (cleaned up). The Second Circuit decided the case in November 2021. Thus, the decision does not assist Plaintiff in showing that the individual Defendants had fair warning that their conduct was unconstitutional at the time they engaged in their actions.

> Plaintiff is requesting the court *prospectively* declare the Board Defendants may not enact a policy proclaiming which beliefs are worthy of First Amendment protection and which are not because it is unconstitutional. Plaintiff is a former employee of OHSU and a resident of this state. *While not alleged*, Plaintiff believes the unlawful conduct she complains of is continuing at OHSU and she is asking the court to declare such conduct unconstitutional *so other OHSU employees with religious beliefs do not have to experience what Plaintiff experienced*.

ECF 23, at 19 (emphasis added).

Generally, one may not claim standing to vindicate the constitutional rights of a third party. *See Singleton v. Wulff*, 428 U.S. 106, 114 (1976). Although the law recognizes some limited exceptions to this rule, Plaintiff's FAC lacks any factual allegations sufficient to show that she has third-party standing to assert claims of other OHSU employees. Indeed, a former employee, without more, typically lacks standing to request prospective declaratory relief to aid current employees, even if the same practices about which the former employee complained are continuing. *See, e.g.*, *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) ("Given that Bayer is no longer employed with Neiman Marcus and has produced no evidence to suggest he plans to seek employment with Neiman Marcus again, there is no basis upon which to conclude he has a reasonably certain need for prospective relief pertaining to its future employment practices."). Accordingly, the Court dismisses Plaintiff's request for declaratory relief for lack of standing.

## CONCLUSION

The Court GRANTS Defendant's Motion for Judgment on the Pleadings and to Dismiss (ECF 20). Regarding Defendants' challenge to Plaintiff's First Claim, alleging religious discrimination in employment, the Court construes Defendant's motion for judgment on the pleadings as a motion to dismiss and finds that Plaintiff has failed to state a claim upon which relief can be granted. Regarding Defendants' challenge to Plaintiff's Second Claim, alleging

PAGE 19 – OPINION AND ORDER

disability discrimination in employment and failure to accommodate, the Court similarly finds that Plaintiff has failed to state a claim upon which relief can be granted. Defendants have not moved against Plaintiff's Third Claim, alleging race and gender discrimination. Regarding Defendants' challenge to Plaintiff's Fourth Claim, brought under § 1983 against the individual defendants for infringement of Plaintiff's First Amendment right to freedom of religion, the Court dismisses that claim under the doctrine of qualified immunity. Regarding, Defendants' challenge to Plaintiff's request for prospective declaratory relief, the Court dismisses that request for lack of standing. If Plaintiff believes she can cure any of the deficiencies identified herein, she may file a second amended complaint within two weeks of the date of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 20th day of September, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge